20 So.2d 415

### TURLEY v. LOUISIANA SAV. BANK & TRUST CO.

No. 37370.

Dec. 11, 1944.

Walter B. Hamlin, of New Orleans, for plaintiff and appellant.

Robert R. Ramos, of New Orleans, for defendant and appellee.

FOURNET, Justice.

Mrs. Charles H. Turley, alleging that on July 21, 1941, she delivered her check drawn on the Whitney National Bank for $4,460, payable to the Louisiana Savings Bank & Trust Company, to a bond broker, Philip J. Liuzza, with instructions that he purchase five Atlanta Laundries bonds from

the said bank, instituted this suit against the Louisiana Savings Bank & Trust Company on June 1, 1942, to recover the principal amount of the check, with interest from the date of judicial demand, on the ground that this check was, in some way unknown to her and without her authority, accepted by the bank and credited to the personal account of Liuzza without the delivery of the bonds to her account.

The defendant first filed exceptions of no cause and no right of action, and, reserving its rights thereunder, answered denying any liability, averring that it knew nothing of the alleged bond transaction between the plaintiff and Liuzza and setting up as a special defense that credit had been given Liuzza's account for the amount of this check upon the plaintiff's specific authorization when payment of her check drawn on the Whitney bank on July 19, 1941, for the same amount and payable to the order of "yourselves" had been refused in order that Liuzza's check of July 19 in plaintiff's favor for $6,639.15, drawn on the defendant bank, might be protected and its cashing by the plaintiff made possible; in any event, that having entrusted this negotiable instrument to Liuzza, her agent and broker, plaintiff thus clothed him with apparent and actual authority to negotiate it as he saw fit and that such loss as she may have suffered by reason thereof was caused by her own negligence in placing such an instrument in his hands.

The lower court, after overruling the exceptions of no cause and no right of action, dismissed plaintiff's suit on the merits, being of the opinion that the plaintiff's check

of July 21, 1941, was credited to Liuzza's account with her consent in order that Liuzza's check to her might be cleared through the defendant bank, such transaction thus redounding to her benefit. The plaintiff is appealing.

While the plaintiff, testifying in her own behalf, did state, in support of her claim, that the check had been given Liuzza for the specific purpose of purchasing five Atlanta Laundries bonds in the amount of $1,000 from the defendant bank, no authority having been given him to use this check for any other purpose, and did deny, as set up in the bank's special defense, that the check had been credited to Liuzza's account with her consent for the specific purpose of placing sufficient funds in his account to clear his $6,639.15 check in her favor, we think, as did the trial judge, that the overwhelming preponderance of the evidence supports the contention of the defendant bank.

N. F. Belloni testified that in carrying out his duties as head bookkeeper of the defendant bank, he called Liuzza on the morning of July 21, 1941, to advise him that his check in Mrs. Turley's favor had overdrawn his account because Mrs. Turley's check of July 19, 1941, for $4,460, on which he had counted to cover this check, remained uncollected, the Whitney bank having refused to cash Mrs. Turley's check because of insufficient funds in her account. He stated that some time later he was called into Liuzza's office (in the same building) to explain to Mrs. Turley, who was there, just why the payment of Liuzza's $6,639.15 check in her favor had been

refused by the Louisiana Savings Bank & Trust Company and that after he had explained the matter tó her, he was asked what could be done to clear the two checks (Liuzza's and hers) through both banks. Accordingly, he had suggested that Mrs. Turley issue another check for $4,460, dated that day (July 21, 1941), payable to the order of the Louisiana Savings Bank & Trust Company, and that such check be deposited to Liuzza's account in lieu of her check of July 19, 1941, he being willing to cash Liuzza's check in her favor for the $6,639.15 if the Whitney would guarantee him protection on her new check. Belloni further stated that after his suggestion was carried out, he called the Whitney and advised them to return the $6,639.15 check for payment.

Belloni's statement is not only corroborated in all material aspects by Liuzza, but also by Mrs. Turley's statement with the Whitney bank, showing that at the time she gave Liuzza her check of July 19 for $4,460 payable to "yourselves" she had a cash balance of only $875.25 in the Whitney to meet it, and by Liuzza's statement with the defendant bank showing that when he gave Mrs. Turley his check of July 19 for $6,639.15, his balance, exclusive of the $4,-460 check, amounted to only $2,837.34. Furthermore, there is in the record an agreement entered into between Liuzza and Mrs. Turley on August 17, 1941, less than a month after the occurrence of the transaction on which this case is predicated, wherein Liuzza acknowledged he was indebted to Mrs. Turley in the amount of $13,240, in payment of which he gave her

a check for $500 and a series of postdated checks. In her answer to a · suit subsequently filed against her by Liuzza for an accounting of their bond transactions, she stated the item in controversy here (Mrs. Turley's check of July 21, 1941, for $4,460, payable to the defendant bank) formed a part of this $13,240 debt.

The record shows this is not a case where an innocent woman has been imposed upon because of her ignorance of the business world and the manipulations of "high finance." According to her own testimony, the plaintiff dealt extensively in bonds and had, for a number of years, done business with Liuzza, allowing him at times to not only keep her bonds in his possession but to also pledge them to secure his own personal loans.

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.